In an action for a judgment declaring, inter alia, that a UCC-1 financing statement recorded against a cooperative apartment known as 2940 West Fifth Street, Apt. 5A, in Brooklyn, was null and void and that a notification of disposition of collateral relating to that cooperative apartment was invalid, and for related injunctive relief, the defendant appeals, as limited by its brief, from so much of an order of the Supreme Court, Kings County (Lewis, J.), dated August 27, 2015, as granted those branches of the plaintiff’s motion which were, in effect, for summary judgment declaring that the UCC-1 financing statement recorded against 2940 West Fifth Street, Apt. 5A, in Brooklyn, was null and void and that the notification of disposition of collateral relating to that cooperative apartment was invalid, and that branch of the plaintiff’s motion which was pursuant to CPLR 6301 for a preliminary injunction enjoining the defendant from foreclosing on that cooperative apartment.
 

 Ordered that the order is modified, on the law, by deleting the provisions thereof granting those branches of the plaintiff’s motion which were, in effect, for summary judgment declaring that the UCC-1 financing statement filed against the cooperative apartment known as 2940 West Fifth Street, Apt. 5A, in Brooklyn, was null and void and that the notification of disposition of collateral relating to that cooperative apartment was invalid, and substituting therefor provisions denying those branches of the motion; as so modified, the order is affirmed insofar as appealed from, with costs to the defendant.
 

 The plaintiff is the sole trustee of the Magidenko Family Irrevocable Trust (hereinafter the trust), which was created by his parents, Natan Magidenko and Tsilya Magidenko (hereinafter together the Magidenkos), in 2008 to hold their shares of stock in a cooperative apartment known as 2940 West Fifth Street, Apt. 5A, in Brooklyn. The Magidenkos, as grantors, were named as the income beneficiaries of the trust, and also retained a life estate in the apartment. In addition to his role as trustee, the plaintiff was also designated as the primary remainderman of the trust, and his children were named as contingent remaindermen.
 

 In July 2011, the plaintiff, both personally and in his capacity as trustee, executed a promissory note in favor of the defendant in the amount of $150,000. As collateral for the loan, the plaintiff, in his capacity as trustee, executed a loan security agreement in which he allowed the defendant, inter alia, to record a UCC-1 financing statement against the apartment. Pursuant to the agreement creating the trust, a copy of which was reviewed by the defendant, the trustee, in his fiduciary capacity, had full right, power, and authority, inter alia, “[t]o borrow . . . such sums of money or other property for such purposes and periods of time, at such rates of interest, as [he] may, in his discretion, determine, to execute promissory notes or other instruments evidencing such borrowings, and if necessary, to furnish any trust property as security therefore.” The loan documentation made no mention of the purpose or purposes for which the loan proceeds would be used.
 

 It is undisputed that the plaintiff stopped making payments on the loan after November I, 2013. After declaring the plaintiff in default by letter dated August 5, 2014, the defendant notified the plaintiff of its intent to sell the subject apartment at a public auction on November 25, 2014.
 

 The plaintiff thereafter commenced this action for declaratory and injunctive relief, and simultaneously moved, on an emergency basis, for a preliminary injunction to stop the November 25, 2014, sale, and, in effect, for summary judgment declaring, inter alia, that the UCC-1 financing statement was null and void. In support of his motion, the plaintiff submitted an affidavit in which he averred, inter alia, that the loan proceeds were for his personal use.
 

 In opposition, the defendant submitted, inter alia, evidence that $30,000 of the loan proceeds were used to satisfy a money judgment against “Ilya Magid, Natan Magidenko, Tsilya Magidenko and The Magidenko Family Irrevocable Trust,” $85,922.50 of the proceeds were transferred to a law firm that had represented the trust, and all but $10,000 of the remaining proceeds were used to pay for various closing costs or were retained by the defendant as “pre-paid interest.” The remaining $10,000 was paid to the defendant as “repayment of a prior loan [the defendant] had made to the [p]laintiff.”
 

 In a supplemental affidavit submitted in reply to the defendant’s opposition papers, the plaintiff denied the existence of any prior loan from, or relationship with, the defendant.
 

 The Supreme Court, inter alia, granted that branch of the plaintiff’s motion which was, in effect, for summary judgment declaring that the UCC-1 financing statement was null and void. The defendant appeals.
 

 Persons dealing with a trustee must take notice of the scope of the trustee’s authority. “An act within [the trustee’s] authority will bind the trust estate or the beneficiaries as to third persons acting in good faith and without notice, although the trustee intended to defraud the estate, and actually did accomplish his [or her] purpose by means of the act in question” (Kirsch v Tozier, 143 NY 390, 395-396 [1894]; see Dye v Lincoln Rochester Trust Co., 40 AD2d 583 [1972], affd 31 NY2d 1012 [1973]). Moreover, “[a] person who in good faith transfers money or property to a trustee is not responsible for the proper application of such money or property; and any right or title derived by him from the trustee in consideration of such transfer is not affected by the trustee’s misapplication of such money or property” (EPTL 7-3.3).
 

 Here, even assuming that the plaintiff’s moving papers were sufficient to establish his prima facie entitlement to judgment as a matter of law, the Supreme Court erred in granting summary judgment to the plaintiff declaring that the UCC-1 financing statement filed against the apartment was null and void and that the notification of disposition of collateral was invalid as the record presents unresolved material issues of fact as to whether the loan proceeds were used to satisfy non-trust debts, and whether the lender acted in good faith in extending the loan (see Matter of Pepi, 1996 WL 34571234, 1996 NYLJ Lexis 64 [Sur Ct, Nassau County 1996]; EPTL 7-3.3; compare Spencer v Weber, 163 NY 493 [1900], and Dye v Lincoln Rochester Trust Co., 40 AD2d 583 [1972], with Kirsch v Tozier, 143 NY 390 [1894]).
 

 Contrary to the defendant’s contention, the unclean hands doctrine did not preclude the granting of preliminary injunctive relief in this case, as the application of that equitable doctrine presents a question of fact that cannot be resolved at this early stage of the action (see ERS Enters. v Empire Holdings, 286 AD2d 206, 207 [2001]; Chai & Tantrakoon v Royal Realty Corp., 246 AD2d 398, 399 [1998]; Lew-Mark Cleaners Corp. v DeMartini, 128 AD2d 758, 759 [1987]).
 

 The defendant’s remaining contention is not properly before this Court.
 

 Chambers, J.P., Miller, Hinds-Radix and Duffy, JJ., concur.